UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

MERCORP N.V.,

    Plaintiff,

v.

LOUIS FERREIRA, KEITH PARKER,
CARLOS RODRIGUEZ, EDWARD HOLDEN
and GUSTAVO MACIAS

    Defendants.
_____/

## COMPLAINT

Plaintiff, Mercorp N.V. ("Mercorp"), pursuant to Fla. Stat. § 607.0750, sues Defendants, as members of the Eastern National Bank N.A. ("ENB" or the "Bank") Board of Directors, Louis Ferreira, Keith Parker, Carlos Rodriguez, Edward Holden and Gustavo Macias (collectively "Defendants") and alleges as follows.[1]

### PARTIES, JURISDICTION, AND VENUE

1. Mercorp is a company organized under the laws of Curaçao. Mercorp owns 99.9% of the shares of ENB.

2. Defendants are members of the ENB Board of Directors (the "Board" or the "ENB Board").

---

[1] This action is related to the lawsuit brought by minority shareholders of ENB against current and former members of the ENB Board on January 14, 2022, styled as *Bancor v. Rodriguez et al*, Case No. 2022-20122-DPG/EGT. Plaintiff intends to file a notice of related action and a motion for consolidation of these two matters.

3. Louis Ferreira ("Ferreira") is an individual and has served as a member on the ENB Board from October 2019 to the present, and has served as President and CEO of ENB from March 2020 to the present. Mr. Ferreira is a resident of Broward County, Florida.

4. Keith Parker ("Parker") is an individual and served as a member on the ENB Board from 2005 to the present. Mr. Parker is a resident of Miami-Dade County, Florida.

5. Carlos D. Rodriguez ("Carlos Rodriguez") is an individual and served as a member on the ENB Board from 2016 to the present, and served as President and CEO of ENB from May 2018 through February 2020. Mr. Carlos Rodriguez is a resident of Miami-Dade County, Florida.

6. Edward Holden ("Holden") is an individual and served as a member on the ENB Board from 2021 to the present. Mr. Holden is a resident of Miami-Dade County.

7. Gustavo Macias ("Macias") is an individual and served as a member on the ENB Board from 2016 to the present. Mr. Macias is a resident of Miami-Dade County, Florida.

1. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and based on the diversity of the parties.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b)(1)-(2) and (c)(2) as this controversy arises in this District where ENB resides and conducts its business, and where most Defendants reside.

**GENERAL ALLEGATIONS**

**A. The Venezuelan Government Has Controlled ENB Since 1999.**

9. ENB is a U.S. chartered bank that is primarily owned by Plaintiff Mercorp. Specifically, Mercorp owns more than 99% of ENB's shares. In turn, Mercorp is wholly owned by Corpofin, C.A. ("Corpofin"), a company organized under the laws of the Bolivarian Republic

of Venezuela ("Venezuela"). Mr. Juan Santaella ("Mr. Santaella"), is one of the ultimate beneficial owners of Corpofin.

10. Since 1994, the Superintendence of Banks of the Bolivarian Republic of Venezuela ("Sudeban"), an office that is subordinate to the Ministry of Finance,[2] had Corpofin under an illegal administrative receivership related to certain alleged debt previously owed by Corpofin to Fogade, an agency of the Venezuelan Government.[3]

11. As a result, for all purposes and effects, the Venezuelan Government has controlled ENB since 1999.

12. In addition, at least since 2018, the U.S. Government has imposed sanctions targeting Venezuelan Government entities and individuals.[4] Two of the individuals that have been under U.S. sanctions since at least 2018 are Major General Rodolfo Marco Torres, who served as the Minister of Finance for Venezuela under the Nicolás Maduro regime from 2014 to 2017, and Simon Zerpa Delgado, who served as the Minister of Finance under the Maduro regime from 2017 to 2020. The Minister of Finance is the direct supervisory entity of Sudeban.

13. The Venezuelan Government, through the government agency Sudeban, appointed Ms. Gabina Rodriguez as the receiver of Corpofin in 2009. Gabina Rodriguez is an agent of the Venezuelan Government. The Maduro regime, through Sudeban, maintains the absolute discretion to nominate and remove Gabina Rodriguez as receiver of Corpofin.

---

[2] The official name is the Ministry of the People's Power for Economy and Finance.

[3] The debt owed to Fogade was paid in full on November 18, 2020, before the Political and Administrative Chamber of the Venezuelan Supreme Justice Tribunal ("TSJ") by Mr. Juan Santaella as shareholder of Corpofin. *See* **Exhibit 1**, Venezuelan Supreme Justice Tribunal's decisions accepting settlement offer and payment from Mr. Santaella.

[4] Moreover, as of January 23, 2019, the U.S. Government has ceased to recognize the Maduro regime as the legitimate government of Venezuela. Instead, the U.S. has recognized Mr. Juan Guaidó and the 2015-elected General Assembly of Venezuela as the only legitimate governing entities of Venezuela.

14. To be sure, Ms. Rodriguez has been employed by the Venezuelan Government her entire professional career: Banco Industrial de Venezuela (1993); Department of the Comptroller General of the Republic (1993-2002); Ministry of Transport and Communications Caracas Metro Corporation (2002-2006); National Bank for Housing and Habitat (2006-2009); Banco de Venezuela ("BV"), Executive Vice President for the Legal Department (2011-2012); and Sudeban, Interventor for different entities (2009-present). *See* **Exhibit 2**, Gabina Rodriguez CV.

15. Since her appointment as interventor for Corpofin, Gabina Rodriguez appointed herself as the sole managing director of Mercorp, which in turn has the majority of voting stock of ENB, and therefore has the votes (unless those voting rights are restricted) necessary to elect the board of directors of ENB.

16. Additionally, since 2015 until 2021, Ms. Rodriguez nominated and appointed herself as a director chairwoman of the ENB Board.

17. Using her authority as managing director of Mercorp, Gabina Rodriguez made sure that the Board of ENB maintained at least one Venezuelan Government Official at all times, in addition to herself:

   a. Starting in 2010, Ms. Rodriguez ratified and renewed the appointment of Carlos Marcano to the ENB Board. At the time, Mr. Marcano was an official of the Venezuelan Government.

   b. Ms. Rodriguez also ratified and renewed the appointment of Rodolfo Porro Aletti to the ENB Board. At the time, Mr. Porro Aletti worked for the Legal Department of the Venezuelan Ministry of Finance.

   c. In 2015, Ms. Rodriguez appointed Elvina Mayela Marcano Belloso to the ENB Board. At the time, Ms. Marcano Belloso was the General Counsel for the Venezuelan Ministry Finance.

   d. Also, in 2015 Ms. Rodriguez appointed Yenny Cristina Gonzalez Naranjo to the ENB Board. At the time, Ms. Gonzalez sat at the board of directors of Fogade and was Legal Counsel for BV.

    e. In 2017, Ms. Rodriguez appointed Cesar Gomez Valero to the ENB Board. At the time and, to this day, Mr. Gomez Valero has been a high-ranking official at Sudeban. Mr. Gomez Valero was a member of ENB's Board until 2021.

See **Exhibit 3,** PI TR 3 [41:10-45:24.] [5]

18. Thus, until August of 2022, Gabina Rodriguez exercised all of the authority of Corpofin and Mercorp's legitimate shareholders, directors, and officers. In other words, until August of 2022, Gabina Rodriguez has had complete control of ENB.

19. Although Corpofin had been intervened for over twenty years, Gabina Rodriguez has admitted that administrative interventions cannot exceed 180 days under Venezuelan law. Yet, she has stated that the decision to end an administrative intervention in Venezuela rests on Sudeban and not her. Sudeban also has final say with respect to any significant transactions taken by Corpofin. See **Exhibit 4,** Declaration of Gabina Rodriguez in the related case *Bancor v. Rodriguez et al*, Case No. 2022-20122-DPG/EGT.

20. Ms. Rodriguez is no longer a director of ENB, nor the Managing Director of Mercorp. However, as detailed more fully below, Ms. Rodriguez continues to excerpt control over the ENB Board. Since August 25, 2022, the ENB Board has refused to call a shareholder meeting—as requested by the majority shareholders and required by ENB's Bylaws and Florida law—by direct instruction of Ms. Rodriguez.

**B. Since 2018, ENB Has Lost At Least 20 Million Dollars**

21. On or about 2017, after all U.S. banks closed their correspondent relationship with BV, a government-owned Venezuelan bank, ENB opened and operated an account for BV.

---

[5] Throughout this Complaint "PI TR" refers to the transcripts of the preliminary injunction hearing held in the related case *Bancor v. Rodriguez et al*, Case No. 2022-20122-DPG/EGT.

Notably, Gabina Rodriguez was an officer of BV from 2009 to 2012, after being appointed in 2009 by Sudeban as interventor of Corpofin.

22. In addition to Gabina Rodriguez, at the time that ENB opened the BV account, ENB had Yenny Gonzalez and Elvina Marcano as members of the ENB Board. At the time, Ms. Yenny Gonzalez was Legal Counsel for BV and a director for Fogade. Ms. Elvina Marcano was General Counsel for the Venezuelan Ministry of Finance.

23. ███████████████████████████████████████

24. ███████████████████████████████████████

25. In October of 2018, the OCC issued, and the ENB Board consented to, a Consent Order ("2018 Consent Order") noting multiple deficiencies in ENB's banking practices, including deficiencies related to the Bank's Bank Secrecy Act (BSA) and anti-money laundering (AML) practices that arose from the opening and operating of the BV account. *See* **Exhibit 5**, 2018 Consent Order.

26. As a result of the Bank's failure to act to remedy the OCC deficiencies, in November of 2020, the OCC issued, again with the consent of the ENB Board, a Consent Order ("2020 Consent Order"), which replaced and superseded the 2018 Consent Order. *See* **Exhibit 6**, 2020 Consent Order.

27. The 2020 Consent Order found that ENB had not attained compliance with the 2018 Consent Order, that ENB remained in violation of 12 C.F.R. §21.21, and that new unsafe or unsound practices existed.

28. The 2020 Consent Order required ENB to maintain certain capital ratios and to submit "an acceptable written Capital and Strategic Plan for the Bank."

29. Under the 2020 Consent Order, ENB is not allowed to declare dividends unless (1) ENB complies with the minimum capital requirements required by the 2020 Consent Order; (2) the dividend or capital distribution complies with 12 U.S.C. §§ 56 and 60 and all other applicable laws; and (3) ENB obtains prior written approval from the OCC's Director for Special Supervision.

30. The OCC further determined that ENB is in "troubled condition" under 12 C.F.R. § 5.51(c)(7)(ii) and reserved its right to institute any enforcement action, including imposing civil money penalties for ENB's failure to comply with the 2018 Consent Order and the 2020 Consent Order.

31. In part because of the expenses the Bank had to incur to comply with the two Consent Orders entered against it, in 2020 alone, ENB had losses in excess of $10 million. *See* **Exhibit 7,** Ferreira DEP. TR. [237:12-15][6].

32. Moreover, ENB's ties with the Venezuelan Government have resulted in approximately $4 Million in revenue losses for ENB with respect to their correspondent banking business. As admitted by Mr. Ferreira, local banks have stopped doing business with ENB as a result of the sanctions that OFAC has implemented against the Government of Venezuela.

---

[6] Throughout this Complaint, Ferreira DEP. TR. refers to the Deposition Transcript of Louis Ferreira, in the related case *Bancor v. Rodriguez et al*, Case No. 2022-20122-DPG/EGT.

33. In 2021, ENB recorded $1.2 Million in losses and, in 2022, ENB is currently losing an average of $310,000 a month.

34. In sum, since 2018, as a result of the mismanagement and failure to comply with the dictates of the OCC by Defendants Macias, Parker, Carlos Rodriguez, and Ferreira, the Bank has incurred losses in excess of $20 million.

C. **Defendants' improper stock compensation scheme.**

35. While the OCC was investigating the deficiencies in ENB's banking practices in 2018, Defendants, Macias, Parker, and Carlos Rodriguez—the very directors whose banking practices led to the OCC investigation—began considering an equity incentive plan to provide for the issuance of restricted stock units ("RSUs") to themselves, as directors of ENB (the "RSU Plan").

36. The stated purpose of the RSU plan was to attract and retain qualified directors and employees. Yet, after the October 2018 Consent Order exposed the mismanagement of Defendants Macias, Parker, and Carlos Rodriguez, these Defendants still went forward and created the RSU Plan in December 2018, designed primarily to benefit themselves.

37. The Board has the authority to propose the RSU Plan, but a shareholder vote and ratification is required to approve the plan because such a plan would dilute shareholder value. However, Defendants Macias, Parker, and Carlos Rodriguez, did not hold a shareholder vote even though they were aware that a vote was required. *See* **Exhibit 8**, ENB Board Minutes of March 25, 2021.

38. Indeed, from 2018 until December 2021, the ENB Board never called for an annual shareholders meeting as is required by ENB's governing documents. Instead of holding a required

shareholder vote, the ENB Board improperly gave Gabina Rodriguez, as representing more than 99% of ENB's shares through Mercorp, sole authority over the plan.

39. Indeed, Defendant Ferreira has conceded that the RSU Plan was improperly adopted and that it should have been subject to a shareholder vote during a shareholder meeting. *See* **Exhibit 9**, PI TR 2, [57.]

40. Since December 2018, RSUs representing about 16% of the Bank's issued shares were issued to individuals, including Defendants.

41. The ENB Board was required to seek prior approval from the Office of Foreign Assets Control ("OFAC") before proposing the stock compensation scheme. The Board was also required to hold a shareholder vote for such a plan.

42. However, Defendants have not sought prior approval from the OCC or OFAC and did not call a special meeting of the shareholders to vote on the RSU Plan. The failure to obtain the prior approval of the OCC or OFAC, and the failure to call a special meeting of the shareholders to vote on the plan renders the stock compensation scheme invalid.

43. In total, the RSU Plan diverts equity representing about 30% of the Bank's issued shares to individuals, including Defendants.

44. If the stock compensation scheme is executed, the Bank may have to record about $4.8 million in expenses.

45. The scheme indeed provides no value to ENB's shareholders or the Bank and is the result of self-dealing by Defendants. Any well-conceived stock option plan shall serve as incentive to the recipients to manage the business properly and pursue the growth and profitability of the company for the benefit of the shareholders. In ENB's case, the illegal stock option scheme was designed to benefit the same directors that managed the bank to lose over $20 million since 2018,

and who violated banking regulations and safe banking practices that led to the OCC Consent Orders.

### D. Defendants Are In Breach of the ENB Bylaws by Direction of Gabina Rodriguez, Who No Longer Serves as Director of Mercorp

46. Mr. Santaella and some of his family members are the legal majority owners of Corpofin.[7] Since its intervention in the late 90s, Mr. Santaella has made tireless efforts to recover control over Corpofin.

47. In 2019, despite disagreeing with the legitimacy of the debt, Mr. Santaella agreed to pay the amounts demanded by Fogade.

48. The Venezuelan Supreme Court accepted Mr. Santaella's offer of payment and ordered the Central Bank of Venezuela to calculate the total amounts owed.

49. In November of 2020, Mr. Santaella made a final payment in full to Fogade by depositing the money with the Venezuelan Supreme Court. The Venezuelan Supreme Court then urged Sudeban to reconsider whether the intervention of Corpofin was still justified, but Sudeban has failed to take action.

50. Following the OCC's November 2020 findings, Mr. Santaella as one of the legal owners of Corpofin and as principal of minority shareholders of Bancor Group Inc. ("Bancor"), and Stitching Particulier Fonds Franeker ("Franeker"), continued to request to meet with the Board and ENB's management to address the issues identified in the 2020 Consent Order to offer help in addressing the Bank's problems. However, the Board and ENB's management refused to meet to address these issues. See **Exhibit 8,** ENB Board Minutes of March 25, 2021.

---

[7] Because of the Sudeban intervention, Mr. Santaella did not have control of Corpofin until August of 2022, but he always remained its legal owner. See **Exhibit 10**, Letter from ENB to OFAC of July 3, 2019.

51. In these communications, Mr. Santaella informed Mr. Ferreira and ENB's Board that he had repaid the debt to Fogade in full. Mr. Santaella also advised the ENB Board of this fact through his legal counsel, Mr. Alcides Avila. *See* **Exhibit 11**, ENB Board Minutes of July 28 of 2021.

52. The Board, however, ignored Mr. Santaella and, instead, took the word of the Venezuelan Government as relayed by Gabina Rodriguez and Cesar Gomez-Valero and not the Venezuela Supreme Court—that Mr. Santaella had not repaid Fogade—at face value. The ENB Board made no efforts to investigate or corroborate the information provided to them by Mr. Santaella and instead, continued to follow the direction of Gabina Rodriguez and the Venezuelan Government in running ENB's affairs. *See* **Exhibit 12**, ENB Board Minutes of January 28 of 2021.

53. In separate legal proceedings, Mr. Ferreira has since testified that he refused to meet with Mr. Santaella because it was the Board's policy to decline one-on-one meetings with any individual shareholder. Mr. Ferreira, however, was forced to admit that he violated that policy when it came to Ms. Gabina Rodriguez as representative of Mercorp, who he met with on multiple occasions:

```
 7     Q.   Well, I mean, by your own testimony you've
 8   just told me that you technically were in violation of
 9   the bank's policy to not meet with a single
10   shareholder, right?
11     A.   Yeah.
12     Q.   Would you agree that application of that
13   policy as it relates to Mr. Santaella and
14   Ms. Rodriguez appear to be in inconsistent?
15     A.   They are inconsistent.
```

*See* **Exhibit 7,** Ferreira DEP. TR. [211-215].

54. On or about July 2022, Mr. Santaella, through counsel, presented a case before the Curaçao Chamber of Commerce and the Curaçao Commercial Registry, arguing that the intervention

of Corpofin was illegal and Curaçao should not recognize it. *See* **Exhibit 13**, Letter to OFAC dated August 22, 2022.

55. In addition, Mr. Santaella argued that Mercorp had been abandoned by Gabina Rodriguez, because she had allowed Mercorp's registration to elapse. Indeed, Mercorp had been a de-registered, inactive company in Curaçao since September of 2020.

56. By a duly called shareholder meeting of Mercorp, Corpofin, the sole shareholder, unanimously resolved to: (i) reinstate Mercorp before the Curaçao Chamber of Commerce; (ii) appoint Juan Jose Caso Llano as Managing Director of Mercorp; (iii) dismiss Gabina Rodriguez as Managing Director of Mercorp; and (iv) appoint Amicorp Curaçao B.V. as local representative of Mercorp.

57. The Curaçao Chamber of Commerce agreed with Mr. Santaella, and allowed Corpofin, under the authority of Mr. Santaella, to reinstate Mercorp and to appoint a new managing director for Mercorp. The Curaçao Chamber of Commerce then acepted Mr. Juan Caso Llano's appointment as Managing Director of Mercorp.

58. In August 22, 2022, Mercorp, informed OFAC and the OCC of the events that unfolded in Curaçao that resulted in a change of control of Mercorp.

59. Three days later, Mercorp, Bancor and Franeker, pursuant to ENB's Bylaws, jointly requested Defendant Ferreira, as CEO of the Bank and Chairman of the Board, to call a special meeting of ENB's shareholders for the purpose of voting on the RSU Plan. *See* **Exhibit 18**, Mercorp Request for Shareholder Meeting of August 25, 2022.

60. On September 1, 2022, Mercorp, Bancor, and Franeker amended the request to add an additional agenda topic regarding the removal of Defendants Macias, Parker and Rodriguez from the Board of Directors and the nomination and appointment of three new directors to the ENB Board.

This new request was sent to Defendant Ferreira and to Mr. Rolando Parets as secretary of the Board. *See* **Exhibit 19**, Mercorp Request for Shareholder Meeting of September 1, 2022.

61. Mr. Ferreira and the ENB Board have refused to call a shareholder meeting despite being required to do so by the ENB Bylaws, which state that that special meetings "**shall** be held…when requested in writing to the president by any three or more Shareholders holding not less than twenty-five (25%) per cent of all the shares entitled to vote…" (emphasis added). *See* **Exhibit 14**, ENB Articles of Association and Bylaws.

62. Despite being presented with official documents from Curaçao authorities showing Mr. Juan Caso Llano as the lawful managing director of Mercorp, Mr. Ferreira and the Board expressly denied Mercorp's request to call a shareholder meeting arguing that they need more time to investigate the events that took place in Curaçao. *See* **Exhibit 15**, ENB Board's Response of Sept. 2, 2022.

63. Even worse, the Board's decision to not hold a shareholder meeting was made after the Board privately consulted with an agent of the Venezuelan Government—Gabina Rodriguez—who advised that "the recent actions taken with respect to Mercorp and Mr. Caso Llano's appointment were improper, unlawful and not duly authorized by her as Interventor or by Corpofin as the shareholder of Mercorp."

64. The Board also indicated that it specifically gave weight to her claims and may refrain from taking any action should Gabina Rodriguez decide to challenge the appointment of Mr. Caso Llano before a Curaçao court.

65. Again, Defendants have breached ENB's Bylaws, which do not provide them with any discretion to dispute Juan Caso Llano's authority as Managing Director of Mercorp. Indeed, the Bylaws state that "[p]roof of the designation to vote may be made by presentation of…a certified

13

resolution of the corporation's board of directors, or comparable governing body, making such designation."

66. Defendants have been provided with a resolution of the shareholders or Mercorp, designating Mr. Caso Llano as Managing Director of Mercorp and a certified copy of an excerpt of the Curaçao Commercial Register showing Mr. Caso Llano's designation as Managing Director of Mercorp. This is the same proof submitted by Gabina Rodriguez prior to the December 17, 2021 shareholder meeting of ENB which was accepted by the ENB Board without question. *See* **Exhibit 16**, Proof of Authority.

67. Of course, underlying Defendants' rejection of Mercorp's request, is the fact that Defendants stand to make $580,000 each, if Mercorp remains under the control of Gabina Rodriguez.

### E. The Bank is in Dire Need of Recapitalization

68. Due to the massive losses suffered by the Bank and because the OCC has mandated it, the Bank is in dire need of recapitalization. The Board is fully aware that the need for recapitalization is imperative to avoid the Bank's closure. *See* **Exhibit 17**, ENB Board Minutes of May 26, 2021.

69. Defendant Ferreira has conceded that the Bank is bleeding money and failure to find an investor that can recapitalize the Bank may result in the Bank being forced to close operations.

70. Because Mercorp is no longer controlled by the Venezuelan Government, Mercorp is in a position to recapitalize the Bank, but Mercorp cannot act if the Board does not hold a shareholder meeting.

### COUNT I – VIOLATION OF ENB BYLAWS AND FLORIDA STATUTES
### (Against All Defendants)

71. Plaintiff re-alleges and incorporates paragraphs 1 through 70 above as though fully set forth herein.

72. As set forth above, Defendants refusal to call a special shareholder meeting of the shareholders is a violation of ENB's Bylaws and Fla. Stat. §607.0702. ENB's Bylaws provide that a special meeting of shareholders "shall" be held "when requested in writing to the president by any three or more Shareholders holding not less than twenty-five (25%) per cent of all the shares entitled to vote…"

73. Similarly, Florida law provides that a special meeting of shareholders "shall" be held "if shareholders holding not less than 10 percent, unless a greater percentage not to exceed 50 percent is required by the articles of incorporation, of all the votes entitled to be cast on any issue proposed to be considered at the proposed special meeting sign, date, and deliver to the corporation's secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held." Fla. Stat. §607.0702.

74. Mercorp has made several requests to Defendants for a shareholder meeting via Mr. Ferreira and the Board's Secretary, Mr. Rolando Parets. However, the Board has expressly rejected these requests in violation of ENB's Bylaws and Florida law.

75. As a direct and proximate result of Defendants' breach of the ENB Bylaws and Florida law, Defendants have deprived Mercorp of its voting control right as majority shareholder and its right to a proportionate voice and influence in ENB's corporate affairs.

## COUNT II – INJUNCTIVE RELIEF
### (Against all Defendants)

76. Plaintiff re-alleges and incorporates paragraphs 1 through 70 above as though fully set forth herein.

77. This is an action for breach of Florida Statutes against Defendants based on their denial to call a special shareholders meeting as required by ENB's Bylaws and Florida law.

78. Defendants' actions are a violation of ENB's Bylaws and Florida law and, therefore, Plaintiff is likely to succeed on the merits.

79. Defendants actions are causing irreparable injury to Plaintiff, who has no adequate remedy at law.

80. An injunction would not be against the public interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, respectfully requests that this Court (1) enter judgment against Defendants for preliminary and permanent injunctive relief (a) ordering that Defendants notice and hold a special meeting of the shareholders for the purposes established in the requests for shareholders meeting of August 25, 2022 and September 1, 2022; (b) enjoining Defendants from disregarding the authority of Mr. Juan Caso Llano as Managing Director of Mercorp; (3) enjoining Defendants from taking any actions, other than calling a special meeting of the shareholders; (4) award Plaintiff it's attorneys fees and costs of this action; and (5) grant other and further relief as the Court deems just and proper.

Dated: September 7, 2022              Respectfully submitted,

**Derek E. León**
Derek E. León
Florida Bar No. 625507
Diego Pérez Ara
Florida Bar No. 1023765
LEÓN COSGROVE, LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: 305.740.1975
Facsimile: 305.351.4059
Email: dleon@leoncosgrove.com
Email: eperez@leoncosgrove.com
Email: dperez@leoncosgrove.com
Email: lburns@leoncosgrove.com
*Counsel for Plaintiff*